# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


JOYE WILLIAMS,                         :
                                       :
            **Plaintiff**              :
                                       :
      **v.**                           :     **CIVIL NO. 3:10-CV-1472**
                                       :
SUPERINTENDENT KLOPOTOSKI,             :     (Judge Munley)
et al.,                                :
                                       :
            **Defendants**             :

## MEMORANDUM
### Background

This *pro se* civil rights action pursuant to 42 U.S.C. § 1983 was filed by Joye

Williams ("Plaintiff") regarding his prior confinement at the State Correctional

Institution, Dallas, Pennsylvania ("SCI-Dallas"*).*[1]  Named as Defendants are the

following SCI-Dallas officials: ex-Superintendent Michael Klopotoski; Major Lawrence

Mahally; as well as Lieutenants Fritz Bleich and David Mosier.

According to the Complaint, Williams has been incarcerated since 1995.  During

September, 2007, Plaintiff was transferred to SCI-Dallas.  Approximately one year later,

Plaintiff was assigned to a single cell in the SCI-Dallas Restricted Housing Unit ("RHU").

See Doc. 2, ¶ 13.  Williams claims that during the eight (8) months he was confined in

---

[1] Williams is presently confined at the Smithfield State Correctional Institution, Huntingdon, Pennsylvania (SCI-Smithfield).

the RHU he "was forced to live in constant illumination 24 hours a day."  Doc. 2, ¶ 1.

Specifically, the Complaint explains that the main florescent lights in the RHU were kept

on from 6:00 a.m. until 12:00 p.m then the bright night light comes on from 12:00 p.m.

until 6:00 a.m..[2]  See id. at ¶ 19.   Plaintiff contends that the policy/practice  of allowing

lights to be kept on for 24 hours each day is unconstitutional.  See id. at ¶ 21.

Williams alleges that there is no legitimate penological justification for the

excessive lighting which purportedly caused him to suffer lack of sleep, optical problems

including seeing spots and perceptual spheres, headaches, a stoppage of sensory

stimulation, and lack of concentration.[3]  He concludes that the "constant illumination" and

Defendants' deliberate indifference to that condition violated his rights under the Eighth

Amendment.  Id. at ¶ 34.  His Complaint further asserts that Superintendent Klopotoski

and Lieutenant Mosier acted improperly when they denied his administrative grievances

wherein he complained about the alleged excessive lighting.  Plaintiff seeks compensatory

and punitive damages as well as declaratory relief.

By Memorandum and Order dated May 18, 2011, this Court partially granted

Defendants' motion to dismiss Plaintiff's Complaint.  See Doc. 22.  Specifically,

Williams' monetary damage claims brought against Defendants in their official capacities

---

[2]  The lights are described 2 four foot long lights of about 64 watts and without a plastic cover to prevent glare.

[3]  The Complaint adds that Williams has been placed on multiple medications due to the physical problems caused by the purportedly excessive lighting.

were dismissed on the basis that such allegations are deemed to be claims against the state itself and thus, barred by the Eleventh Amendment. Second, dismissal was granted in favor of Defendants Klopotoski and Mosier with respect to any claims solely stemming from their review of Plaintiff's grievances and administrative appeals. Third, dismissal was granted with respect to any claim regarding the use of night security lights in Plaintiff's RHU cell.[4] However, Plaintiff's contention that excessive use of the main lights in the SCI-Dallas RHU violated his Eighth Amendment rights was allowed to proceed.

By Order dated January 20, 2012, page 8 of the May 18, 2011 Memorandum and Order was corrected to reflect that the SCI-Dallas main florescent lights at issue in this matter are located in Plaintiff's cell not in the RHU hallway. See Doc. 45. Presently pending is Defendants' motion requesting entry of summary judgment. See Doc. 48. The motion which has been fully briefed is ripe for consideration.

## Discussion

Defendants contend that they are entitled to entry of summary judgment with respect to Plaintiff's surviving claims on the grounds that: (1) Plaintiff failed to exhaust his administrative remedies; (2) the SCI-Dallas RHU lights do not constitute cruel and unusual punishment under the Eighth Amendment; and (3) there was no deliberate indifference to any serious risk of harm to the Plaintiff.

---

[4] Specifically, the low wattage RHU night light which was on between midnight and 6: 00 a.m. each day.

3

**Standard of Review**

Summary judgment is proper if "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P.

56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual

dispute is "material" if it might affect the outcome of the suit under the applicable law.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is

"genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-

finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all

doubts as to the existence of a genuine issue of material fact in favor of the non-moving

party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D.

607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered

evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d

Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support

the claims of the non-moving party, the non-moving party may not simply sit back and

rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324

(1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the

depositions, answers to interrogatories, and admissions on file, designate specific facts

showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also

Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted

4

where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Administrative Exhaustion**

Plaintiff's Complaint acknowledges that there was an available administrative grievance procedure at SCI-Dallas during the relevant time period. See Doc. 2, ¶ 9. Williams adds that he filed grievances "relating to this complaint and completed the process to the greatest extent possible." Id. at ¶ 10.

Defendants concede that Plaintiff appealed to final administrative review one grievance regarding the SCI-Dallas RHU lighting, Grievance No. 249585 dated November 6, 2008. However, because this grievance only specifically named Lieutenant Bleich, Defendants' summary judgment motion argues that "Plaintiff is in procedural default as to the other defendants." Doc. 49, p. 6.

Section 1997e(a) of title 42 U.S.C. provides:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

5

exhausted.

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." Porter v. Nussle, 122 S.Ct. 983, 992 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001). Claims for monetary relief are not excused from the exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000). Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action. Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000). "[E]xhaustion must occur prior to filing suit, not while the suit is pending." Tribe v. Harvey, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)); Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

The United States Supreme Court in Jones v. Bock, 549 U.S. 199, 219 (2007), stated that the primary purpose of the exhaustion requirement is to allow "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Id. The administrative exhaustion mandate also implies a procedural default component. Spruill v. Gillis 372 F.3d 218, 222 (3d Cir. 2004).

As explained by the Third Circuit Court of Appeals, a procedural default rule "prevents an end-run around the exhaustion requirement." Id. at 230. It also ensures

"prisoner compliance with the specific requirements of the grievance system" and

encourages inmates to pursue their administrative grievances "to the fullest." Id.

Similarly, the Supreme Court has observed that proper exhaustion of available

administrative remedies is mandatory, meaning that prisoners must comply with the

grievance system's procedural rules, including time limitations. Woodford v. Ngo, 548

U.S. 81 (2006).

"There is no futility exception" to the exhaustion requirement." Brown v. Croak,

312 F.3d 109, 112 (3d cir. 2002) (citing Nyhuis, 204 F.3d at 75. The Third Circuit Court

of Appeals reiterated its no futility exception by rejecting an inmate's argument that

exhaustion should be excused because prisoner grievances were regularly rejected. Hill v.

Smith, 186 Fed. Appx. 271, 274 (3d Cir. 2006). The Court of Appeals has also rejected

"sensitive' subject matter or 'fear of retaliation' as a basis for excusing a prisoner's failure

to exhaust." Pena-Ruiz v. Solorzano, 281 Fed. Appx. 110, 113 (3d Cir. 2008).

An inmate is not required to specifically plead or demonstrate exhaustion in his or

her complaint. See, Jones, 549 U.S. at 216;  see also Ray v. Kertes, 285 F.3d 287 (3d Cir.

2002)(a prisoner does not have to allege in his complaint that he has exhausted

administrative remedies). Rather, pursuant to the standards announced in Williams v.

Runyon, 130 F.3d  568, 573 (3d Cir. 1997), it is the burden of a defendant asserting the

defense of non-exhaustion to plead and prove it.[5]

The Pennsylvania Department of Corrections ("DOC") has established a

---

[5] In Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003), the United States Court of
Appeals for the Third Circuit similarly stated that "[f]ailure to exhaust administrative
remedies is an affirmative defense for the defendant to plead."

Consolidated Inmate Grievance Review System which has been periodically amended. Section V of DC-ADM 804 (effective December 8, 2010) states that "every individual committed to its custody shall have access to a formal procedure through which to seek the resolution of problems or other issues of concern arising during the course of confinement." See Doc. 29, p. 8. It adds that the formal procedure shall be known as the Inmate Grievance System and provides a forum of review and two (2) avenues of appeal. Section VI ("Procedures") of DC-ADM 804 provides that, after attempted informal resolution of the problem, a written grievance may be submitted to the Facility Grievance Coordinator within fifteen (15) working days after the events upon which the claims are based, but allowances of extensions of time will be granted under certain circumstances.

An appeal from the Grievance Coordinator's Initial Review decision may be made in writing within ten (10) working days to the Facility Manager or Superintendent. A final written appeal may be presented within fifteen (15) working days to the Secretary's Office of Inmate Grievances and Appeals (SOIGA). A prisoner, in seeking review through the DOC grievance system, may include reasonable requests for compensation or other legal relief normally available from a court. However, an improperly submitted grievance will not be reviewed.

The Third Circuit Court of Appeals has recognized that under the DOC's administrative review system a prisoner's grievance should identify specific persons, if practicable. Spruill, 372 F.3d at 234. It held that an unexplained failure to identify a responsible prison official in a grievance constitutes a procedural default of the claim. The Court of Appeals added that the prison's grievance process could excuse such a procedural

8

default by identifying the unidentified person and acknowledging that they were fairly within the compass of the prisoner's grievance. However, in <u>Jones</u>, 549 U.S. at 219, the United States Supreme Court established that "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances."

Under the standards announced by the Supreme Court in <u>Jones</u>, the failure of Williams' grievance to specifically name Klopotoski, Mosier and Mahally does not by itself necessarily warrant entry of dismissal for non-exhaustion. Second, since the substance of the Plaintiff's pending claims against those Defendants was included in his grievance, the request for entry of summary judgment on the basis of non-exhaustion will be denied.

## **Eighth Amendment**

Plaintiff describes his surviving claim as asserting that he was subjected to "continuous cell lighting from 6am to 12 midnight." Doc. 52, p. 6. Williams adds that this practice was unconstitutional and lacked a legitimate penological justification. He notes that there was an abundance of natural light in the RHU.

Defendants' second argument contends that "no reasonable jury could find that the daytime lighting in the RHU constituted cruel and unusual punishment." Doc. 49, p. 7. They add that the lighting in the RHU cells was not excessive and of minimal wattage. In addition, the "stronger lights are not on during most of the night and did not interfere with Plaintiff's sleep." <u>Id.</u> Finally, it is argued that there are legitimate penological reasons for having daytime lighting.

In support of their arguments, Defendants have submitted a declaration under

9

penalty of perjury by Lieutenant Bleich. <u>See</u> Doc. 51, Attachment 5, p. 79. Bleich

acknowledges that prior to 2008 SCI-Dallas RHU prisoners could control the lighting in

their cell and be in total darkness. However, due to security concerns, for instance it was

difficult for correctional staff to see into the cells, new security enhancements were put in

place. As part of those enhancements, prison staff was given control of the lighting in

RHU cells.

Bleich further states that the RHU main cell lights are necessary in that they permit

staff to look into the cells while making their rounds and confirm that the prisoners are

"present, uninjured or sick." <u>Id</u>. at ¶ 6. The Defendant adds that if inmates controlled

their lighting they "could hide from staff and throw liquids or other objects at staff." <u>Id</u>. at

¶ 8.[6] Moreover, the lighting aids with the daily rounds of the RHU because if not for the

lights it would be  difficult to see into the cells without the use of a flashlight. In addition,

daytime routines such as the distribution of meals and medications and the taking of

inmate counts also benefit form having lighted cells. Bleich concludes by noting that he

was unaware of any serious medical problems caused by the RHU lights and that those

light remained on until final medications were dispensed "around 11:00 p.m." <u>Id</u>. at ¶ 6.

A supporting sworn declaration by Lieutenant Mosier (<u>Id</u>. at Attachment 6)

reiterates the security concerns expressed by Bleich. Mosier likewise states that he did not

consider the lighting to be excessive and had no knowledge that employment of the lights

created any health risk adding that the main RHU lights "is required because staff and

---

[6] One security risk cited by Bleich was that sometimes prisoners throw cups of urine at
guards.

10

must be able to safely ambulate the ranges for daily routines (i.e. showers, yard, medication, feeding)." Id. at ¶ 6. Major Mahally has also submitted a declaration under penalty of perjury which echoes the security concerns and expressed by both Bleich and Mosier and adding that RHU rounds are conducted on an hourly basis and that "nurses and escort officers were having problems seeing into the cells at night to check if the inmates were taking their medications." Id. Attachment 4, p. 74. Mahally also opines that he did not believe that the lights were excessive or harmful. A sworn supporting declaration by Superintendent Klopotoski likewise expresses the opinion that the lights were not excessive, promoted institutional safety, and did not pose a health risk. The former Superintendent's declaration also provides that the two main cell lights are turned off between 11:00 p.m. and midnight each day. See id. at Attachment 3, ¶ 3.

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety. See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993). Prison conditions may amount to cruel and unusual punishment if they cause "unquestioned and serious deprivations of basic human needs ... [that] deprive inmates of the minimal civilized measure of life's necessities." Tillman v. Lebanon County Correctional Facility, 221 F.3d 410 (3d Cir. 2000).

In reviewing conditions of confinement claims, courts have stressed that the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" are critical to a finding of cruel and inhumane treatment.

11

Moreover, the focus must be on the deprivation of a particular basic necessity.  As

explained in Wilson v. Seiter, 501 U.S. 294, 304-05 (1991):

> Some conditions of confinement may establish an Eighth
> Amendment violation 'in combination' when each would not
> do so alone, but only when they have a mutually enforcing
> effect that produces the deprivation of a single, identifiable
> human need such as food, warmth, or exercise – for example, a
> low cell temperature at night combined with a failure to issue
> blankets. To say that some prison conditions may interact in
> this fashion is a far cry from saying that all prison conditions
> are a seamless web for Eighth Amendment purposes. Nothing
> so amorphous as 'overall conditions' can rise to the level of
> cruel and usual punishment when no specific deprivation of a
> single human need exists.

In addition to showing conditions that pose a risk of serious harm, the inmate must show

that the prison official responsible for the conditions of confinement acted with "a

sufficiently culpable state of mind." Id. at 298.  A prison official violates the Eighth

Amendment when he acts with deliberate indifference to a known objectively serious risk

to a prisoner's health or safety.  See Farmer, 511 U.S. at 837; Beers-Capitol v. Whetzel,

256 F. 3d 120, 125 (3d Cir.  2001).  This requirement of actual knowledge means that "the

official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511

U.S. at 837.

Williams was incarcerated at SCI-Dallas between September 27, 2007 and

September 22, 2009.  Plaintiff was held in the SCI-Dallas RHU from September 29, 2008

until April 22, 2009 and from July 7, 2009 until August 5, 2009.  While in the RHU

Plaintiff lived in three (3) separate cells.

The parties agree that prison staff and inmates must be able to safely travel through the RHU and that correctional officers must be able to view the inside of each cell.  It is equally undisputed that Plaintiff was unable to control the lighting in his RHU cell and was forbidden form covering or modifying the RHU cell lights.

It is also undisputed that the lighting at issue came from a light fixture on the wall above the desk of Williams' RHU cell.  This fixture consists of two fluorescent bulbs which stayed on from 6:00 a.m. until 11:00 p.m. to midnight each day.  Specifically, the challenged lighting stayed on until after the final distribution of medication each night.[7]  However, it is undisputed that the lights were not on between the hours of midnight to 6:00 a.m. daily.

According to the parties, the bulbs were either 28 or 32 watts each.  See Doc. 53, ¶ 4.[8]  There is also a factual dispute as to whether the lights in Williams's RHU cell  had a plastic cover.[9]  Those factual differences are not of such magnitude as to affect the disposition of the pending summary judgment request.  Moreover, the Court for purpose of disposing of this summary judgment motion will rely upon Plaintiff's version of those disputed facts.

---

[7] It is undisputed that a written notice by Major Mahally dated February 26, 2009 notified the SCI-Dallas RHU inmates that the standard procedure in the RHU would be that the night lights in the RHU would be activated and the  main lights turned off when "the days final medication has been dispensed."  Doc. 51, Attachment 2, p. 43.

[8] There was also a smaller watt security night light in Plaintiff's RHU cell.  This Court previously concluded that the employment of that security night light was constitutionally acceptable.

[9] It is unclear as to whether Plaintiff is claiming that all three of the RHU cells which he lived in were missing plastic covers for the lighting at issue.

13

According to copies institutional grievances accompanying the Complaint and Plaintiff's own deposition testimony, while at SCI-Dallas Williams was treated for anxiety disorder and given various medications.[10]  A copy of a March 3, 2009 administrative request which accompanies the Complaint acknowledges that Plaintiff was placed on the medication Sinequin and was being treated by a psychiatrist J. Jesse M.D.[11]  See Doc. 2, Exhibit G.  Plaintiff is still taking psychotropic medications at SCI-Smithfield, and two of his medications have been increased since arriving at SCI-Smithfield.

Plaintiff's opposing brief notes that each of the 25 RHU cells had a window and the entire wall in front of the cells were windows "which made it difficult" to sleep.  Doc. 52, p. 7.  It has also been established that Williams had the option of turning away from the lights when sleeping and facing the wall of his cell.

As previously noted by this Court's May 18, 2011 Memorandum and Order, requiring inmates to live in constant illumination may under certain circumstances rise to the level of a constitutional violation.  Bacon v. Minner, 229 Fed. Appx.  96, 100 (3d Cir. 2007); see also  Sims v. Piazza, 2009 WL 3147800 *23  (M.D. Pa. Sept. 28, 2009)(Kosik, J.). However, in Bacon, the Court concluded that a claim that the main lights in a segregated housing unit which "were turned on between the hours of 8:30 am and 11:30 pm" as well

---

[10]  Plaintiff's deposition testimony acknowledges that he suffers from anxiety disorder. See Doc. 51, Attachment 1,  p. 13.  However, since Plaintiff's institutional medical/mental health records have not been submitted for consideration it is unclear as to when he was diagnosed with anxiety disorder or if any medical professional has opined that the RHU lighting was the cause of, or aggravated Williams' anxiety disorder.

[11]  A copy of an earlier  grievance filed by Plaintiff indicates that he was not seen by Dr. Jesse until some time after December 4, 2008.  See id. at Exhibit F.

14

as between "4:45 am and 7:00 am" did not rise to the level of a constitutional violation because the plaintiff did not allege that he was subject to constant illumination or had suffered any significant medical problem due to the purportedly excessive illumination. The Court concluded that Inmate Bacon's claims "were not objectively serious to warrant constitutional protection." Id.

As was the case in Bacon this is not a case of constant illumination with respect to the two main RHU cell lights, rather, the two florescent bulbs were left on a maximum of 18 hours a day, never past midnight, with a significant portion of that time period being the daytime hours. It is especially noted that Plaintiff has also not presented this Court with any expert testimony whatsoever which could establish that the challenged lighting caused him to suffer any actual health problems. While there are documents which showed that Plaintiff was placed on the medication Sinequin by Doctor Jesse in late 2008 or early 2009, there is no evidence in the record that could establish that said medication was specifically prescribed for a condition caused by the RHU lighting at issue herein. [12]

In conclusion, in light of the legitimate RHU security and safety concerns established by the Defendants' supporting declarations as well as Plaintiff 's failure to

---

[12] In his deposition testimony, Plaintiff admitted that he had no expert medical witnesses. See Doc. 51, Attachment 1, p. 25. He has also not provided the Court with any indication that he has supporting evidence from any expert which could show that he was harmed by the RHU lighting. Moreover, copies of Plaintiff's institutional medical records have not been submitted for consideration by this Court. In light of the above this Court simply cannot conclude that Williams was placed on medication due to the RHU lights.

It is also noted that Plaintiff offers no explanation as to why his medication has been increased despite the fact that he is no longer housed in the RHU and has been transferred from SCI-Dallas.

show any resulting injury, the relatively low level of illumination which admittedly did not

exceed 18 hours per day is insufficient to rise to the level of a constitutional violation

under the Eighth Amendment violation.

While the parties acknowledge that Williams is being treated for an anxiety

disorder, Plaintiff has not submitted any expert medical evidence nor has this Court been

presented with any medical evidence whatsoever which could establish that Plaintiff

developed this anxiety disorder or any other medical problems as a result of the challenged

RHU lighting.

In the event, that Plaintiff can produce such evidence he may file a motion for

reconsideration within fourteen (14) days of the date of this Memorandum and Order. See

Stewart v. Beard, 2011 WL 3155343 (M.D. Pa. July 30, 201)(Caputo, J.)(constant

illumination in RHU where prisoner had failed to show any resulting serious medical

problem was constitutional).

**Pendent Jurisdiction**

Defendants also request that this Court decline supplemental jurisdiction over any

remaining pendent state law claims. See Doc. 49, p. 15, n. 1.

Federal courts have jurisdiction over state claims which are related to the federal

claims and result from a common nucleus of operative facts. See United Mine Workers v.

Gibbs, 383 U.S. 715, 725 (1966); see also Aldinger v. Howard, 427 U.S. 1, 9 (1976).

Supplemental jurisdiction may be declined over a claim when the court has dismissed all

claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c)(3) (1997).

Decisions regarding pendent jurisdiction should be premised on considerations of judicial

economy, convenience and fairness to the litigants.  New Rock Asset Partners v. Preferred

Entity Advancements, 101 F.3d 1492, 1505 (3d Cir. 1996)(citation omitted).

Once jurisdiction has been exercised over the state claim, elimination of the federal

claim does not deprive the court of jurisdiction to adjudicate the pendent claim.  Id. (citing

Lentino v. Fringe Emp. Plans, Inc., 611 F. 2d 474, 479 (3d Cir. 1979)).  However, when the

federal claim is dismissed prior to trial, a district court should decline to decide the pendent

state claims, "unless considerations of judicial economy, convenience, and fairness provide

an affirmative justification for doing so."  Borough of West Mifflin v. Lancaster, 45 F.3d

780, 788 (3d Cir. 1995).

In light of this Court's determination that Defendants are entitled to entry of

summary judgment with respect to Plaintiff's federal claims, jurisdiction will be declined

with respect to any pendent state law claims.    An appropriate Order will enter.

      **BY THE COURT:**

      **s/James M. Munley**
      **JUDGE JAMES M. MUNLEY**
      **United States District Court**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOYE WILLIAMS, | : |
| | : |
| **Plaintiff** | : |
| | : |
| v. | : **CIVIL NO. 3:10-CV-1472** |
| | : |
| SUPERINTENDENT KLOPOTOSKI, | : **(Judge Munley)** |
| et al., | : |
| **Defendants** | : |

## ORDER

**AND NOW**, to wit, this 12ᵗʰ day of December, 2012, for the reasons set forth in the

foregoing Memorandum, it is hereby **ORDERED** that:

>    1.    Defendants' motion for summary judgment (Doc.48)   is
>
>    **GRANTED.**
>
>    2.    The Clerk of Court is directed to **CLOSE** the case.

>                                  **BY THE COURT:**
>
>                                  **s/James M. Munley**
>                                  **JUDGE JAMES M. MUNLEY**
>                                  **United States District Court**